UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID GIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| BRIDGESTONE AMERICAS, INC. and | ) | |
| BRIDGESTONE RETAIL OPERATIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff David Gil, by his undersigned counsel, brings this action against Defendants Bridgestone Americas, Inc. and Bridgestone Retail Operations, LLC would allege as follows:

## INTRODUCTION

1.     This is a civil action brought by David Gil ("Gil"), a current employee of Bridgestone Retail Operations, LLC and Bridgestone Americas, Inc. (collectively "Bridgestone") and a participant in the Bridgestone Americas, Inc. Salaried Employees Retirement Plan, Supplement A-1 ("Plan"), an entity governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against his employer Bridgestone for gross misrepresentations and other fiduciary breaches as described herein.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(l).

1

3. Venue is proper in this district because the Defendants may be found in this district, some or all of the breaches for which relief is sought occurred in this district, and the Plan is administered in this district. 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Gil has been an "employee" of Bridgestone and its relevant predecessors since July 28, 1996. 29 U.S.C. § 1002(6). He currently resides in Oklahoma City, Oklahoma.

5. Bridgestone Retail Operations, LLC ("BSRO") is a Delaware company with its principal place of business at 200 4th Avenue South, Suite 100, Nashville, TN 37201. Upon information and belief, BSRO is a subsidiary or other business unit of Bridgestone Americas, Inc. Bridgestone is an "employer" as defined by Section 3(5) of ERISA. 29 U.S.C. § 1002(5).

6. Bridgestone Americas, Inc. is a Nevada corporation with its principal place of business at 200 4th Avenue South, Suite 100, Nashville, TN 37201. It is the "administrator" and "plan sponsor" of the Plan as those terms are defined by Section 3(16) of ERISA. 29 U.S.C. § 1002(16). Bridgestone Americas, Inc. is also the named fiduciary of the Plan as that term is defined by Section 402 of ERISA. 29 U.S.C. § 1102.

## FACTUAL BACKGROUND

7. BSRO owns and operates multiple retail tire sales and service centers across the United States, including, for example, Firestone Complete Auto Care, Tires Plus, and other retail names. Gil began working at a BSRO location in Beaverton, Oregon as a salaried Manager Trainee in 1996.

8. From July 1996 until September 2000, Gil worked for BSRO as a managerial employee at different BSRO retail locations in Oregon.

2

9. In September 2000, Gil left BSRO to work for a competitor. However, his time away from Bridgestone was brief.

10. On or about December 30, 2001, Gil resumed his employment with BSRO, taking a job as an hourly Service Associate at a BSRO retail location in Oklahoma City, Oklahoma. Gil has been continuously employed by BSRO at various retail locations in Oklahoma, primarily as a Service Manager, from this time through the present day.

11. Other than a break in service from September 2000 to November 2001, Gil has been a Bridgestone employee since 1996. He is a current employee with nearly 25-years of service to the company.

12. In or about October 2010, Mr. Gil's wife suffered a massive heart attack and became permanently disabled, requiring substantial assistance in her daily life. Mr. Gil cut down his hours with Bridgestone to part-time in order to care for her, although he continued to be a managerial employee of Bridgestone.

13. Upon his hire in 1996, Gil became a participant in the Plan, and he has been a participant in the Plan since that time. The Plan is a defined benefit plan, with a complex formula for calculating benefits depending on which of the many distribution options chosen.

14. Gil knew very little about his pension benefits for the first several years of his employment, because Bridgestone failed to provide him any information about his benefits, not even an annual pension benefit statement.

15. Beginning in or around 2011, Mr. Gil began thinking in earnest about creating a retirement plan, so that he could dedicate himself full-time to his wife's care.

16. In June 2015, Mr. Gil contacted Bridgestone's human relations office asking about his retirement options and seeking plan documents detailing those options. That request is

4887-2481-8195, v. 1

catalogued in a written message on Bridgestone's online employee portal. In response to the inquiry, Bridgestone falsely told Gil that he was ineligible for pension benefits. Bridgestone also failed to provide the request plan documents at that time.

17. Written and online employment materials pointed Mr. Gil to the Bridgestone Pension Benefit Estimator, an online tool available to Bridgestone employees to calculate their retirement benefits under the Plan. In or about June 2015, he first checked the Pension Benefit Estimator, and from that time forward, Mr. Gil checked Pension Benefit Estimator bi-monthly, or approximately 6 times per year. On each occasion, the program calculated his preferred pension distribution option, a 5-Year Certain and Life with 100% annuity, at $406 per month.

18. On several occasions, after checking the Pension Benefit Estimator, Mr. Gil followed up by calling the 1-800 number provided to verify that the calculator provided by the Estimator was correct. He was always told by the person answering the call that the Estimator calculation is correct.

19. In the summer of 2016, Mr. Gil relied on the figures produced by the Pension Benefit Estimator to carefully construct a budget that would allow him to retire from Bridgestone to devote his full attentions to his wife.

20. In late 2016, executing that plan, he elected to take his Social Security retirement benefits four years early, a decision that cost him several hundred dollars per month as compared to the full benefit, but an amount he planned to offset with the $406 Bridgestone pension benefit.

21. In the summer of 2019, he also applied for and ultimately accepted another job to begin upon his retirement, one that he could do one day a week while his wife had other caregivers.

22. Finally, as the culmination of his retirement plan, Mr. Gil informed Bridgestone

4

4887-2481-8195, v. 1

that he wished to retire on or about September 1, 2019. In response, Bridgestone sent him a pension application packet, dated June 4, 2019, which calculated the 5-Year Certain and Life with 100% annuity option as $128.33 per month. This was the first communication from Bridgestone, written or oral, suggesting that his pension benefit was any amount other than $406 per month.

23.     Bridgestone stood by its re-calculation of Mr. Gil's pension amount, despite conceding that its own error had produced the $406/month calculation.

24.     Financially unable to retire with this reduced monthly pension amount, Mr. Gil withdrew his retirement application and continued working for Bridgestone at the same Oklahoma City retail location.

25.     On December 25, 2020, Mr. Gil's wife of 45 years passed away. Mr. and Mrs. Gil never got to enjoy even a single day of his retirement together.

## CAUSES OF ACTION

### COUNT I
### Failure to Provide Required Documents
### (29 U.S.C. § 1132(c))

26.     Gil incorporates the allegations contained in paragraphs 1-25 of this Complaint as if fully set forth herein.

27.     Section 502(c) of ERISA allows participants and beneficiaries to enforce their statutory rights to receive certain information from the plan administrator. 29 U.S.C. § 1132(c).

28.     Relevant to this case, Section 105(a)(1)(B) of ERISA requires the administrator of a defined benefit plan to "furnish a pension benefit statement at least once every 3 years to each participant" during that participant's employment. 29 USC § 1025(a)(1)(B)(i).

29.     Mr. Gil has been employed by Bridgestone, and continues to be employed by

4887-2481-8195, v. 1

Bridgestone, since 1996.   He has never received a Plan benefit statement.

30.     Mr. Gil was prejudiced by Bridgestone's failure to provide him with statutorily required benefit statements, as that failure forced him to rely on Bridgestone's various misrepresentations about his future pension benefit in making retirement decisions.

## COUNT II
## Breach of Fiduciary Duty
## (29 U.S.C. § 1104)

31.     Gil incorporates the allegations contained in paragraphs 1-30 of this Complaint as if fully set forth herein.

32.     Section 502(a) of ERISA allows participants and beneficiaries to "obtain [] appropriate equitable relief" to enforce the provisions of ERISA and the relevant plan.  29 U.S.C. § 1132(a)(3)(B).

33.     As a fiduciary, Bridgestone is charged with the general duties of loyalty, care, and exclusive purpose to Plan participants.  ERISA Section 404, 29 U.S.C. § 1104(a).  Defendants acted in a fiduciary capacity at all times relevant to this complaint.

34.     Encompassed within these general Section 404 duties are specific fiduciary duties to convey complete and accurate information material to participants, particularly in response to participant questions, and not to mislead them regarding the plan or plan benefits.

35.     Over the course of approximately 4 years, Bridgestone repeatedly misrepresented to Mr. Gil the amount of his accrued pension benefit.  In doing so, Bridgestone violated its fiduciary duties to Mr. Gil pursuant to Section 404 of ERISA.

36.     These misrepresentations were material to various decisions Mr. Gil made when planning his retirement, and he reasonably and detrimentally relied on them.  In fact, Mr. Gil had no choice but to rely on Bridgestone's misrepresentations, as Bridgestone failed to provide

4887-2481-8195, v. 1

periodic benefit statements to Mr. Gil about his Plan benefits.

37.     Over the years, Mr. Gil has received by mail an annual funding statement, which tells participants about the financial health of the Plan. Those materials direct participant questions about their individual benefits to the Pension Benefit Estimator or to the 1-800 number that Mr. Gil had called on several occasions.

38.     In other words, every communication that Mr. Gil has ever received from Bridgestone over the years about retirement directed him to the Pension Benefit Estimator or the 1-800 number, which provided and confirmed false benefit calculations. Bridgestone failed to provide benefit statements or any governing Plan documents, even upon request, thereby depriving Gil of the ability to independently verify the Pension Benefit Estimator calculation.

39.     Mr. Gil has been greatly harmed by Bridgestone's fiduciary failings. He suffered, and continues to suffer every month, an economic loss of several hundred dollars as a result of taking his social security benefits early, at a reduced monthly rate, in reliance on promised Plan benefit. He also suffered a heartbreaking emotional loss, as Bridgestone's actions deprived Mr. Gil of being able to spend the last year of his wife's life together with her in retirement.

**WHEREFORE**, Plaintiff prays for the Court to:

A.      Order, enjoin, or otherwise require Defendants to pay Mr. Gil the promised monthly pension benefit; or

B.      Alternatively, order, enjoying or otherwise require Defendants to pay Mr. Gil an amount equal to the difference in his current monthly Social Security benefit and his maximum monthly Social Security benefit; and

C.      Assess Defendants the statutory penalty of $100 per day for failure to provide periodic benefit statements, 29 U.S.C. § 1132(c)(1); and

4887-2481-8195, v. 1

D.      Award Plaintiff costs and attorneys' fees in pursuing this action; and

E.      Award any other relief this Court deems just and proper.

                              Respectfully submitted,


                              s/Karla M. Campbell
                              Karla M. Campbell (TN 27132)
                              Branstetter, Stranch & Jennings, PLLC
                              223 Rosa L. Parks Avenue, Suite 200
                              Nashville, TN 37203
                              Tel. 615-254-8801
                              karlac@bsjfirm.com

4887-2481-8195, v. 1