IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAVID GIL,                          )
                                    )
        Plaintiff,                  )
                                    )        NO. 3:22-cv-00184
v.                                  )        JUDGE RICHARDSON
                                    )
BRIDGESTONE AMERICAS, INC., and     )
BRIDGESTONE RETAIL OPERATIONS,      )
LLC,                                )
                                    )
        Defendants.                 )


**MEMORANDUM OPINION**

In this case, the Complaint sets forth two counts, each of which asserts a claim under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 et seq. Each claim is brought against

both Defendants, i.e., Bridgestone Americas, Inc. ("BSAM") and Bridgestone Retail Operations LLC

("BSRO"). Count I asserts a claim for failure to provide documents a plan administrator is required to

provide under ERISA ("Section 502(c) Claim"), and Count II asserts a claim for breach of fiduciary duty

("Section 502(a)(3) Claim").

Pending before the Court is "Defendant [BSRO]'s Motion to Dismiss and Defendant

[BSAM's] Partial Motion to Dismiss" (Doc. No. 15, "Motion"), supported by an accompanying

memorandum of law (Doc. No. 16, "Defendants' Brief"). The Motion actually contains two

different motions, one by BSRO to dismiss both counts against it, and one by BSAM to dismiss

Count I (but not Count II) against it.[1] Plaintiff has filed a response in opposition (Doc. No. 22),

and Defendants have filed a reply (Doc. No. 25, "Reply").

---

[1] Since the Motion is a single motion filed by both Defendants, the Court herein refers to assertions made
in the Motion or Defendants' Brief as being made by both Defendants, rather than one Defendant or the
other.

<u>FACTUAL ALLEGATIONS</u>[2]

BSAM is a Nevada corporation with its principal place of business in Nashville, Tennessee. (Doc. No. 1 at ¶ 6). BSRO is a Delaware corporation, also with its principal place of business in Nashville, Tennessee, that owns and operates retail tire sales and service centers across the United States. (*Id.* at ¶¶ 5, 7). BSRO is a subsidiary of BSAM.[3] (*Id.* at ¶ 5). BSAM sponsors and

---

[2] The (alleged) facts set forth in this section are taken from the Complaint and are accepted as true for purposes of deciding the Motion, consistent with the discussion below regarding legals standards on a motion to dismiss under Rule 12(b)(6). The first paragraph of the Court's recitation of the facts closely follows the recitation in Defendants' Brief, except that it removes certain gloss and context that Defendants add (not necessarily with any nefarious intent) to the actual language of the Complaint's allegations based on an extra-complaint document (Doc. No. 16-1, the Final Administrative Determination) that the Court cannot consider in deciding the Motion.

As noted below, it is proper for Defendants to rely on the Plan, the contents of which can be considered (albeit not for the truth of any *factual* statements set forth in the Plan, as indicated below). But Defendants cannot properly rely on the Final Administrative Determination, which is something they cite repeatedly in the "Factual Background" section of Defendants' Brief in an (improper) attempt to create a version of the relevant facts than is more expansive and defense-friendly than the version set forth in the Complaint; the impropriety is exacerbated by Defendants repeated citation of the Final Administrative Decision not just for *what it states*, but in some instances for *the truth of what its states as a factual matter*. It would be perverse indeed if a defendant could have a court take as true, for purposes of a Rule 12(b)(6) motion to dismiss, cherry-picked factual statements in the defendant's own document merely because that document was referred to in the plaintiff's complaint (which actually is not the case with respect to the Final Administrative Determination, as discussed below). It would be especially perverse where the complaint referred (rightly or wrongly) to the substance of (or position conveyed by) the document as being *wrongheaded and in violation of the plaintiff's rights*—which is what happened here if indeed (contrary to the Court's conclusion) the Complaint were taken to refer to the Final Administrative Determination. The undersigned will not countenance taking as true defendant-selected factual statements set forth in a defendant-created document merely because a plaintiff's complaint mentioned the document, especially where (as here) the complaint clearly referred to the substance of the document as something generally or primarily unworthy of being accepted as correct, accurate, etc.

But as indicated elsewhere herein, things are different where a complaint does refer to a document and the document is central to the Plaintiff's claims (which as noted elsewhere herein is *not* true with respect to the Final Administrative Determination), and the defendant has filed an undisputedly authentic copy of the document. Under those circumstances, the undersigned will consider (to the extent relevant for purposes of the pending Rule 12(b)(6) motion) the contents of the document—but not take as true any *factual assertion* found among those contents *unless* the complaint's reference to the document indicates that the plaintiff is asserting, or for some other reason should in fairness be relegated to accepting, the truth of such factual assertion.

[3] The Complaint's verbatim allegation here is that "[u]pon information and belief, BSRO is a subsidiary or other business unit of BSAM" (Doc. No. 1 at ¶5). But as noted, the Complaint also alleges that BSRO is a legal entity of its own (a limited liability corporation), so for the reasons discussed below it is apparent that it would be a subsidiary of BSAM, and not a non-subsidiary unit of BSAM.

administers the Bridgestone Americas, Inc. Salaried Employees Retirement Plan, Supplement A-1 ("Plan"), an employee-benefit plan governed by ERISA. (*Id.* at ¶¶ 1, 6). The Plan is a defined benefit plan.[4] (*Id.* at ¶ 13). BSRO is an "employer" as defined by Section 3(5) of ERISA (29 U.S.C. § 1002(5)). (*Id.* at ¶ 5).[5]

Plaintiff, David Gil, has been employed by BSRO nearly continuously and has participated in the Plan continuously since 1996. (*Id.* at ¶ 7-13). During that period, from 1996 to the time of filing of the Complaint, Defendants never provided Plaintiff with a Plan benefit statement. (*Id.* at ¶ 29).

---

The way the term is generally used, a "business unit" of a corporation (such as BSAM, which is a corporation) can refer *either* to something that has no legal identity separate from the corporation *or* to something (like a limited liability company) that does have a legal identity separate from the corporation but is nevertheless in some sense part of the corporation. BSRO is the latter kind of business unit, and what typically makes that kind of business part of the corporation is that it is partially or wholly owned by the corporation—which is to say a subsidiary of the corporation. So under normal parlance, the Complaint's allegation here suggests that BSRO must be a subsidiary of BSAM, and not some non-subsidiary "business unit" of BSAM.

For their part, Defendants state (albeit without citation to the Complaint or anything at all, which is relatively forgivable here because the statement is naturally something within their knowledge), "BSRO is an affiliate of BSAM, but is a separately organized and operated corporate entity." As just noted, given the allegations of paragraph 5 of the Complaint, the particular kind of "affiliate" that BSRO happens to be is a subsidiary.

[4] "ERISA recognizes two basic types of retirement plans: defined contribution plans and defined benefit plans." *Lonecke v. Citigroup Pension Plan*, 584 F.3d 457, 461 (2d Cir. 2009). The Supreme Court has noted that (at least for some purposes under ERISA) a defined-benefit plan should be distinguished from a defined-contribution plan. *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020). Explaining the distinction, the Supreme Court has stated:

> In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions.

*Id.*

[5] In making this allegation, paragraph 5 of the Complaint actually uses the ambiguous term "Bridgestone" to identify the "employer," but in context it is clear that the term is referring to BSRO and not BSAM (or, for that matter, any other "Bridgestone" entity).

Based on these straightforward and topically limited allegations, Plaintiff asserts against both Defendants the two claims mentioned above. Count I, the 502(c) claim, is premised on Plaintiff's correct observations that "Section 105(a)(1)(B) of ERISA [i.e., 29 U.S.C. § 1025(a)(1)(B)] requires the administrator of a defined benefit plan to 'furnish a pension benefit statement at least once every 3 years to each participant' during that participant's employment" and that this kind of requirement is enforceable by plan participants and beneficiaries via a claim under ERISA Section 502(c) (i.e., 29 U.S.C. § 1132(c)). (Doc. No. 1 at ¶ 28, 27) (quoting 29 U.S.C. § 1025(a)(1)(B)(i)). Plaintiff then alleges that "Bridgestone"—a term defined in the Complaint to mean both Defendants collectively (Doc. No. 1 at ¶ 1) and perhaps used here in Count I in an attempt to keep open Plaintiff's options to assert the liability of BSAM, BSRO, or both—failed to (ever) furnish Plaintiff with a Plan benefit statement. Plaintiff thus implies that both Defendants are liable under Section 502(c) for such failure to comply with 29 U.S.C. § 1025(a)(1)(B)(i).

Count II, the Section 502(a)(3) Claim, is premised on Plaintiff's implication that under 29 U.S.C. § 1104(a), a fiduciary under ERISA is "charged with the general duties of loyalty, care, and exclusive purpose to Plan participants," including "specific fiduciary duties to convey complete and accurate information material to participants, particularly in response to participant questions, and not to mislead them regarding the plan or plan benefits" (Doc. No. 1 at ¶ 33, 34). Plaintiff alleges that "Bridgestone" (meaning "Defendants," as noted above) acted in a fiduciary capacity at all relevant times. (*Id.* at ¶ 33). Plaintiff then alleges that Defendants violated their alleged fiduciary duties in that, among things, they "repeatedly misrepresented to Mr. Gil the amount of his accrued pension benefit" and "failed to provide benefit statements or any governing Plan

documents, even upon request . . . ." (*Id.* at ¶¶ 35, 38). As relief for these alleged violations, Plaintiff asks that the Court:

> A.      Order, enjoin, or otherwise require Defendants to pay Mr. Gil the promised monthly pension benefit; or
>
> B. Alternatively, order, enjoying or otherwise require Defendants to pay Mr. Gil an amount equal to the difference in his current monthly Social Security benefit and his maximum monthly Social Security benefit; and
>
> C. Assess Defendants the statutory penalty of $100 per day for failure to provide periodic benefit statements, 29 U.S.C. § 1132(c)(1);
>
> D. Award Plaintiff costs and attorneys' fees in pursuing this action; and
>
> E. Award any other relief this Court deems just and proper.

(Doc. No. 1 at 7-8).

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, and as noted in multiple places below, when a document is referred to in the pleadings and is integral (central) to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). To put it only slightly differently, "[a] Rule 12(b)(6) movant 'has the

burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)).That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## ANALYSIS

I.    COUNT I WILL BE DISMISSED AS TO BSRO BUT NOT BSAM

    A.    Count I alleges of violation of Section 502(c)(1)(A) in particular.

Initially, the Court finds it prudent to clarify the nature of the Section 502(c) Claim that Plaintiff has asserted in Count I. As discussed below, there are two kinds of claims under Section 502(c), and Plaintiff has asserted only one of them. Claims under Section 502(c) are prescribed in Section 502(c)(1) in particular. That paragraph provides:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, section 1025(a) of this title, or section 1032(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1). Manifestly, Section 502(c)(1) prescribes liability for an administrator for one kind of failure in subparagraph (A) and for another kind of failure in subparagraph (B). In this way, each of the two subparagraphs prescribes a unique claim. The two kinds of claims should not be confused with one another, and a complaint's general reference to a Section 502(c) claim should not necessarily be taken as a reference to (i.e., notice to defendant of) both kinds of claims. As one court put it based on the circumstances there involved:

> The Court acknowledges its obligation to look at the substance of the complaint, not labels and form.[3] Doing so supports the Court's conclusion that Plaintiff brought this case to assert claims under ERISA § 502(c)(1)(B) (29 U.S.C. § 1132(c)(1)(B)) . . . . Plaintiff cannot reasonably argue it asserted a claim under subsection (c)(1)(A) or notified Defendant of its intention to do so. Plaintiff's broad reliance on his citation to § 502(c) in his prayer for relief for Count III certainly cannot be said to have provided Defendants' notice of his indication to proceed under § 502(c)(1)(A). The Court thus strikes Plaintiff's reference in his reply brief to a claim under ERISA § 502(c)(1)(A).

*Stanton v. NCR Pension Plan*, No. 1:17-CV-2309-MLB, 2021 WL 1170109, at *3 (N.D. Ga. Mar. 29, 2021).

Here, Plaintiff pled a claim only under Section 502(c)(1)(A) and not under Section 502(c)(1)(B). Count I, the Section 502(c) Claim, is premised solely on the Plan's administrator allegedly breaching the requirement of Section 105(a)(1)(B)(i) of ERISA (29 U.S.C. § 1025(a)(1)(B)(i)) to "furnish [each participant] a pension benefit statement at least once every 3 years to each participant," i.e., "fail[ing] to provide [Plaintiff] with statutorily required benefit statements." (Doc. No. 1 at ¶¶ 28, 30). This kind of claim falls exclusively under Section 502(c)(1)(A). Section 502(c)(1)(A) relates, in pertinent part, expressly to an administrator's failure to meet certain specified requirements of ERISA, including the requirements of Section 105(a) of ERISA (29 U.S.C. § 1025(a)(1)(B)(i)) in particular; by contrast, Section 502(c)(1)(B) relates expressly to an administrator's failure (or refusal) to comply with a request for certain information.

The allegations on which Count I squarely rests involve the former failure, but they do not involve the latter (inasmuch as Count I does not refer to any *request* by Plaintiff).[6] And notably, Count I is captioned "Failure to Provide Required Documents (29 U.S.C. § 1132(c))," which is the kind of failure referred to in Section 502(c)(1)(A) and not in Section 502(c)(1)(B).

In Defendant's Brief, Defendants make no distinction between the two kinds of claims, and indeed nowhere indicate any awareness of a distinction between them. Thus, Defendants do not indicate in any way that they were actually on notice that Plaintiff had brought a claim under Section 502(c)(1)(B) additionally or alternatively to a claim under Section 502(c)(1)(A).

For all of these reasons, Plaintiff's claim in Count I is one made exclusively under Section 502(c)(1)(A). The Court will proceed accordingly, although it doubts that Count I would fare any better or worse on the instant Motion were it treated as encompassing a claim under Section 502(c)(1)(B) and not just a claim under Section 502(c)(1)(A).

> **B.** Count I will be dismissed as to BSRO because there are no allegations that plausibly suggest, even by inference, that BSRO is in fact the Plan administrator.

The Court first addresses Defendants' argument that Plaintiff has failed to state a claim against BSRO in particular as to Count I. Defendants argue that only the plan administrator can be liable on a Section 502(c) claim and that the Complaint makes clear that the plan administrator here was BSAM, not BSRO. In his Response, Plaintiff concedes that only the plan administrator can be held liable on Count I and that he has explicitly alleged (in paragraph 6 of the Complaint) that BSAM is the plan administrator. To state the matter plainly, Plaintiff has alleged in the Complaint and asserted in response to the Motion—unmistakably, unqualifiedly, and to his benefit (for purposes

---

[6] Count I incorporates all of the allegations in the paragraphs (1-25) that preceded it, and one of those allege that in June 2015 Plaintiff had requested (unspecified) plan documents but never received them. But this allegation makes clear neither that Plaintiff requested a benefit statement in particular nor that Count II is premised specifically on the denial of this (or any other) request.

of asserting liability against BSAM)—that BSAM is the plan administrator and is the proper party be held liable on Count I. (Doc. No. 22 at 3) ("As the Salaried Employees Retirement Plan administrator, there can be no doubt that Defendant BSAM is the proper party to Plaintiff's Count I and liable for the per-day statutory penalty.").

That means, given the commands of *Iqbal* and *Twombly*, that for purposes of the instant Motion, BSRO is not the plan administrator and thus cannot be held liable on Count I. Asserting otherwise, Plaintiff denies in his Response that his allegations fail to plausibly allege BSRO's liability on his Section 502(c) claim.

First, Plaintiff essentially asserts that there is still some mystery as to whom the Plan designates as the administrator. Specifically, ignoring that elsewhere in the Complaint he purports to speak knowledgably about the contents and meaning of the Plan, he asserts that the Court must treat as unknown who the Plan designates as the administrator because the contents of the Plan are not available to the Court for consideration on the instant Motion. But the Plan has since been placed on the record as an attachment to Defendants' Reply. This means that the Plan now can be considered, as made clear from the discussion in *Berrylane Trading, Inc. v. Transportation Ins. Co.*, 754 F. App'x 370 (6th Cir. 2018):

> Berrylane [the plaintiff] argues that [the defendant] cannot rely on the lease agreement in support of its 12(b)(6) motion because it was not attached to the complaint. This is incorrect for two reasons. First, this court has held that in reviewing a 12(b)(6) motion, it "primarily considers allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quotation omitted). The lease agreement appears in the record of the case, and can therefore be considered in support of the 12(b)(6) motion.
>
> Second, this court has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quotation omitted). TIC attached the lease agreement in its

reply in support of its motion to dismiss. Berrylane indirectly refers to the lease agreement by claiming that "a thief broke into a warehouse located at 2602 NW 72nd Avenue, Doral Florida, and stole iPhones belonging to Berrylane," and Berrylane's lease agreement is central to its claim because the Endorsement covers locations that "you acquire by purchase or lease." Thus, this court may consider the lease agreement in reviewing the 12(b)(6) motion.

*Id.* at 378 n.2. In the present case, the Plan document is referred to repeatedly in the Complaint and is manifestly central to Plaintiff's claims, so the contents of Plan may be considered, having been placed into the record in connection with a reply in support of a 12(b)(6) motion to dismiss; more precisely, the Court can consider what the Plan *says* (to the extent that the bare fact of what it says is relevant).[7] And here, the bare fact that the Plan says that its administrator is BSAM obviously is highly relevant on the key issue of who the administrator actually is. Indeed, this fact is generally dispositive of who the administrator is; as Plaintiff himself notes, "ERISA defines the term 'administrator' as the person so designated in the plan documents." (Doc. No. 22 at 7) (citing 29 U.S.C. § 1002(16)).

Plaintiff then suggests that perhaps BSAM is not the Plan administrator even if it is designated as such by the Plan. True, "it may be necessary to examine the factual circumstances surrounding the administration of the plan to determine identity of the plan administrator 'even if these factual circumstances contradict the designation in the plan document.'" *Rohan v. UnitedHealthcare Ins. Co.*, 881 F. Supp. 2d 1356, 1359 (N.D. Fla. 2012) (quoting *Hamilton v. Allen–Bradley Co.,* 244

---

[7] By contrast, the Court cannot consider any factual assertions made in the Plan as support for the truth of such assertions; the Court cannot treat such substance of the Plan as support for any arguments a defendant/movant wishes to make in support of a 12(b)(6) dismissal. This is because when extra-complaint documents are appropriately considered on a 12(b)(6) motion, they may be considered in order to identify what the contents of the documents *are*, but they may not be considered for the *truth* of any *factual assertions* included within such contents. Put differently, the copy of the Plan provided by Defendant establishes what the Plan says, and what is says about who it designates as the administrator, has (under 29 U.S.C. § 1002(16)) very relevant independent legal significance and thus may be considered on the instant Motion; by contrast, any assertions of fact within the Plan document are not to be considered on the instant Motion.

F.3d 819, 824 (11th Cir. 2001)). But while it "may" be necessary to do such an examination, the Complaint does not indicate in any way that it *is* necessary to do so in this case (let alone indicate that such an examination would reveal that BSRO rather than BSAM is the administrator). That is, the Complaint includes no allegations suggesting—even in the alternative—that the administrator is someone other than whoever the Plan designated as the administrator (which happens to be BSAM). To the contrary, the Complaint states without qualification that BSAM is the administrator, period, and it certainly seems to imply that this is so because the Plan says it is so. So the Court has no basis to say that for purposes of the instant Motion, the administrator is not BSAM or that the administrator is not necessarily BSAM and instead could be someone else. If the Complaint had alleged alternatively, with some minimally adequate supporting factual allegations, that BSRO rather than BSAM was the administrator, the result likely would be different. But the Complaint did not do so, and the Court must reject Plaintiff's post hac effort, made only in response to the Motion, to inject into this case speculation (new and unsupported by anything alleged in the Complaint) that BSRO rather than BSAM might be the administrator.

What essentially happened here is that Plaintiff made an unqualified allegation regarding one Defendant specifically in order to make that Defendant liable on the claim, and then the other (second) Defendant pointed out correctly that such unqualified allegation suggests in no uncertain terms that the claim could be brought *only* against the first Defendant. Then Plaintiff sought to avoid one consequence of its unqualified allegation essentially by claiming that potentially the allegation is wrong, and that potentially the allegation would be revealed to be wrong once a better time came to look at what the Plan actually says about who the plan administrator is—this despite the fact that the Complaint unmistakably suggests that Plaintiff knows full well exactly what the Plan says in this regard and indeed based his unqualified allegation (as to who the administrator

is) on what the Plan said in this regard. The Court does not see how, under *Iqbal* and *Twombly*, a plaintiff (while still seeking to benefit from the natural consequences of an unqualified allegation that are *positive* for him with respect to one defendant), can avoid the *negative* natural consequences of that unqualified allegation (once they are pointed out by the other defendant) with respect to the other defendant merely by claiming that perhaps the allegation is wrong—while of course refusing to disavow the allegation's correctness insofar as such correctness *benefits* the plaintiff by supporting the claim against the first defendant.

Additionally, it strikes the Court is untenable that a plaintiff could assert that the court should treat the correctness of the allegation as *unknown* to the extent that it hurts the plaintiff (while of course treating it as *correct* to the extent that it aids the plaintiff) merely because the very document that the plaintiff plainly relied on to make the allegation—in an entirely unqualified manner, no less—happened not to be attached to the complaint by the plaintiff. It seems especially untenable where, as here, Defendants properly did make that document (the Plan) part of the record for purposes of the motion to dismiss.

Seeking to avoid the Court's straightforward conclusion, Plaintiff points to cases where courts found that for purposes of the respective motions to dismiss there at issue, the identity of the plan administrator could not be treated as a known fact. But those cases were able to articulate some uncertainty at the motion-to-dismiss stage as to who the administrator was. In the instant case, for all of the reasons above—and especially because Plaintiff himself purports to indicate with certainty exactly who the administrator is—there is no basis for treating the identity of the administrator as unknown for purposes of the instant Motion. Instead, treating Plaintiff's own allegations as true (as required by *Iqbal*/*Twombly* and as one would think Plaintiff would prefer), the Court must treat as fact that BSAM is the administrator. This assumed fact is crucial to Plaintiff

stating a claim on Count I against BSAM. But Plaintiff must take the bad with the good, and this assumed fact as a matter of law dooms any claim on Count I against BSRO.

Accordingly, Count I is dismissed to the extent that it is brought against BSRO.

### C.  Count I will not be dismissed as to BSAM.

Plaintiff fares better in defeating the Motion with respect to his claim in Count I against BSAM. With respect to the claim in Count I against BSAM (and, for that matter, against BSRO, a claim which is dismissed on alternative grounds as discussed immediately above), Defendants argue that the applicable statute of limitations is Tenn. Code Ann. § 28-3-104(a)(1)(C), which prescribes a limitations period of one year that begins running "within one year after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a)(1)(C). Defendants argue that as a factual matter, the limitations period began running more than one year prior to the filing of this lawsuit. Specifically, Defendants assert that "Plaintiff received a detailed, personal calculation of his final denial of appeal of his benefits on August 30, 2019," and that this is dispositive because Plaintiff filed this action well over one year after August 30, 2019. (Doc. No. 16 at 10).

Defendants' argument fails unless the Court accepts it as true for purposes of the Motion the factual assertion that "Plaintiff received a detailed, personal calculation of his final denial of appeal of his benefits on August 30, 2019." The Court here assumes arguendo that Defendants' limitations analysis is otherwise correct and turns now to whether to accept this factual assertion as true.

The assertion is not supported by the allegations of the Complaint, which does not say anything about Plaintiff "appeal[ing]" any denial of his benefits, let alone about Plaintiff receiving a calculation of his final denial of appeal of his benefits on August 30, 2019. As for the specific date of August 30, 2019, the Complaint does not even mention it. Indeed, the Complaint does not

provide the date of any events (of any kind) that occurred after the mailing to Plaintiff of a pension application packet dated June 4, 2019.

Defendants' factual assertion instead first appears in the record in this statement (and purportedly supporting citation) contained in Defendants' Brief: "[Plaintiff's] individualized benefit calculation was finally confirmed on August 30, 2019 when the Board issued its final determination confirming that Gil's monthly pension benefit under the Plan was $128.33 per month. (Final Administrative Determination at 2)." (Doc. No. 16 at 5). As indicated, Defendants represent that the Final Administrative Determination shows that Plaintiff received a detailed, personal calculation of his final denial of appeal of his benefits on August 30, 2019. This representation is misleading, as the Final Administrative Determination does not provide any direct support for, let alone show conclusively, that "Plaintiff received a detailed, personal calculation of his final denial of appeal of his benefits on August 30, 2019." The Final Administrative Determination (Doc. No. 16-1) is a letter to Plaintiff bearing the date of August 30, 2019 and the caption "VIA OVERNIGHT MAIL" Nothing on the face of the document—or in any other materials of record in this case (such as an affidavit, which could not be considered on the instant Motion anyway)—indicates when it was mailed (if ever) or when (if ever) Plaintiff received it. Even assuming arguendo that under certain circumstances it can be presumed or inferred that a letter addressed to a person was in fact sent to the person and received by the person close to the date shown on the letter, that would not help Defendants; this is because Defendants provide no support for the proposition that such an inference or presumption can (let alone should or must) be applied under the current circumstances, which involve a motion on which inferences are to be drawn *in favor of* rather than against the plaintiff. So Defendants' argument here is a non-starter

because it relies on a document to show something that it does not show and (as far as Defendants have demonstrated) cannot be treated as shown by inference or presumption.

There are others reason why Defendants' argument fails here. First, the Court declines to find that the Final Administrative Determination was referred to in the Complaint, rejecting Defendants argument that it was referred to in the Complaint's statement that "'Bridgestone stood by its re-calculation of Mr. Gil's pension amount.'" (Doc. No. 25 at 1 (quoting doc. No. 1 at ¶ 23)). Defendants provide no support for either this argument or its *de facto* necessary premise that a complaint's allegation regarding what a defendant (or anyone else, for that matter) did *in general terms*—here, the allegation that Defendants "stood by [their] re-calculation of Mr. Gil's pension amount"—necessarily is a reference to *a document* that according to *the defendant* (and not the plaintiff) was a (or *the*) document whereby the defendant did it. And the Court affirmatively rejects this notion. If (as here) a defendant is relegated to conclusorily asserting that an allegation about what *generally the defendant did* is, "in . . . context," (Doc. No. 25 at 1), actually a reference to a *particular document*, then the defendant has not done enough to show that the allegation should be construed *against Plaintiff* as referring to that document. In short, whatever Plaintiff meant when referring to Defendants standing by their re-calculation, the Complaint did not refer here to *any* document, let alone the Final Administrative Determination in particular—and so the Final Administrative Determination cannot be considered in support of any motion treated as one under Rule 12(b)(6).[8]

---

[8] Consistent with the Court's observations regarding the applicable legal standard on the Motion, Defendants note that "Courts may consider documents attached to a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment if the attached materials are: (i) referred to in the plaintiff's complaint and are central to [the] claims or (ii) matters of public record." (Doc. No. 25 at 1 (quoting *Kassem v. Ocwen Loan Servicing, LLC*, 704 Fed. App'x 429, 432 (6th Cir. 2017) (internal quotation marks omitted)). Here, Defendants must rely on the first of these options, because they make no assertion, let alone a credible assertion, that the Final Administrative Determination qualifies as a "matter[ ]of public record."

Second, even if the Complaint did refer to the Final Administrative Determination, that document cannot reasonably be deemed "central" to Plaintiff's claims as required for it to be considered, and Defendants do nothing to show otherwise. The Court does not see how, for example, the existence or content of this particular document would help Plaintiff establish any element of either of his claims. Perhaps the Final Administrative Determination is appropriately deemed central to *Defendants' defense*, but that is not the same thing.

In short, Defendants' argument for dismissal of Count I as to BSRO fails because it relies on a document that does not establish what Defendants claim it establishes and cannot be considered unless the Court converts the instant Motion into a motion for summary judgment. And the Court declines to make such a conversion; accordingly, whatever the merits of the (limitations-based) argument for dismissal of Count I, the argument is premature at this stage.

## II. COUNT II WILL NOT BE DISMISSED AS TO BSRO (OR, FOR THAT MATTER, BSAM).

With respect to Count II, breach of fiduciary duty under ERISA, Defendants seek dismissal only with respect to BSRO. The elements of breach of fiduciary duty, each of which Plaintiff must have plausibly alleged in the Complaint in order for its claim to survive, are "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these [challenged representations] constituted material misrepresentations; and (3) that [the plaintiff] relied on those misrepresentations to [his] detriment." *Van Loo v. Cajun Operating Co.*, 703 Fed. Appx. 388, 394 (6th Cir. 2017) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).

As the Sixth Circuit has explained:

ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

> 29 U.S.C. § 1002(21)(A). The fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity. "ERISA defines fiduciary ... in *functional* terms of control and authority over [a] plan." *DeLuca v. Blue Cross Blue Shield of Michigan,* 628 F.3d 743, 747 (6th Cir.2010) (citation and internal quotation marks omitted). Thus, we examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or "merely a business decision that has an effect on the ERISA plan not subject to fiduciary standards." *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 718 (6th Cir. 2000) (internal quotation marks and alterations omitted).

*Walker v. Fed. Exp. Corp.*, 492 F. App'x 559, 564 (6th Cir. 2012). So the question here is whether Plaintiff has plausibly alleged that BSRO—Plaintiff's alleged (and undisputed) employer—was acting in a fiduciary capacity in engaging in "the conduct at issue," i.e., taking the actions the Complaint alleges that BSRO (and BSAM) took.

The answer is no, in the view of Defendants. According to Defendants, "Gil has not plausibly pled facts that, if true, would indicate [that BSRO] engaged in any aspect of plan administration as opposed to the entity which, as pled, is the Plan's administrator, much less any administrative acts that were done in a fiduciary capacity." (Doc. No. 12 at 12-13). Defendants thus argue essentially that the Complaint does not allege facts plausibly that BSRO (which here is to be contrasted with BSAM) undertook any of the alleged conduct that constituted  acting in a

fiduciary capacity, and that therefore the Complaint does not plausibly allege that BSRO was acting in a fiduciary capacity as required to state against BSRO the claim set forth in Count II.[9]

Even though (as Plaintiff has alleged with good reason and without dispute) BSAM is the Plan administrator and BSRO was Plaintiff's employer, that does not necessarily mean that BSRO cannot be a fiduciary under ERISA. This is a point Plaintiff specifically makes (Doc. No. 22 at 10-11), and Defendant does not disagree with this.

It is true that the Complaint does not attribute *uniquely* to BSRO (of, for that matter, BSAM) any of the conduct allegedly constituting acting in the capacity as an ERISA fiduciary. Instead, the Complaint refers to all such conduct either as that of "the Defendants" or as that of "Bridgestone," which as noted above means both Defendants, collectively. So what the Complaint alleges is that *both* Defendants engaged in all such conduct. It likewise alleges that both Defendants acted in a fiduciary capacity at all relevant times.[10] (Doc. No. 1 at ¶ 33). So Plaintiff *has* alleged that BSRO undertook this conduct, even though he has not alleged that BSRO undertook this conduct *alone* or to the exclusion of BSAM.

True, alleging merely that BSRO undertook this conduct is not necessarily the same as alleging (as is required) *underlying facts* that plausibly suggest that BSRO undertook this conduct,

---

[9] Defendants could have made the same argument with respect to BSAM because the Complaint likewise does not attribute any such conduct specifically to BSAM. But Defendants did not make such an argument, perhaps because it is arguably inferable that the alleged conduct must have been that of at least the Plan administrator—even if the Complaint did not refer to the conduct as being the Plan administrator's conduct as distinct from its co-defendant's conduct—which Defendants insist (consistent with the allegations of the Complaint and with the contents of the Plan, as noted above) is BSAM. But in any event, Count II has not been challenged with respect to BSAM, and so Count II survives with respect to BSAM.

[10] Plaintiff implies that this allegation contributes towards the plausibility of the allegation that BSRO acted in a fiduciary capacity at relevant times, i.e., when it communicated with Mr. Gil about his pension. (Doc. No. 22 at 10). The Court disagrees; standing alone, this is merely a conclusory assertion of an element of the claim in Count II (or, alternatively, a legal conclusion) and under *Iqbal* and *Twombly* is disregarded in the assessment of the claim's plausibility.

and Defendants suggest that Plaintiff failed to do the latter. Specifically, Defendants argue that Plaintiff "has not pled any facts alleging that BSRO 'strayed out of its lane' and engaged in fiduciary acts that are within the purview of BSAM (or its delegee) as the named plan administrator. (Doc. No. 25 at 6) (footnote omitted). The Court takes Defendants' point, which is far from a frivolous one. But ultimately the Court cannot conclude that Plaintiff necessarily was required to include allegations of specific facts suggesting that BSRO strayed into the purview of the actual plan administrator. Even without such allegations, the allegations of the Complaint as a whole can make it at least *plausible* that BSRO strayed into the purview of Plan fiduciary activities.

But in focusing on what Plaintiff has not alleged on this issue, Defendants have not explained why the facts that Plaintiff *has* alleged that are relevant to this issue either (i) are not themselves plausible or (ii) do not plausibly suggest that BSRO had some role in plan administration. In particular, Defendants have not explained why it is not plausible—especially with inferences being drawn in Plaintiff's favor—that when a plan participant's employer is a subsidiary of the plan administrator, the employer has done at least the minimum necessary to be deemed to have itself engaged in "conduct constitute[ing] 'management' or 'administration' of the plan, giving rise to fiduciary concerns . . . ." *Hunter, Inc.,* 220 F.3d at 718.

More specifically, Defendants have not explained why it is not plausible that BSRO is properly deemed to have taken part—through agents and employees of BSRO who were not instead acting as agents and employees of BSAM—in the actions of "Defendants" that are alleged in the Complaint and clearly amount to "management" or "administration" of the Complaint. It is far from implausible, given that it is inferable that a subsidiary would conduct affairs that technically should be conducted solely by the parent company. Perhaps the subsidiary did not do

so here. But the Complaint does not reflect a deficiency on this point that would thwart Plaintiff's right to proceed with discovery on this topic.

On the other hand, there are three potential problems with Plaintiff having alleged, without any distinction between BSRO and BSAM, that they both engaged in conduct amounting to acting as a fiduciary.[11] That is, these allegations are potentially susceptible to three different arguments at the instant motion-to-dismiss stage. The first potential argument is that the Complaint is improper because (so the argument would go) it has impermissibly lumped together BSRO and BSAM without delineating between the respective conduct of each of them. *See, e.g.*, *Holdings v. Socotra Opportunity Fund, LLC*, No. CV2201329MWFPDX, 2022 WL 18284897, at *2 (C.D. Cal. Nov. 29, 2022) (dismissing numerous claims pursuant to Rule 12(b)(6) "because those claims improperly lump together several Defendants without differentiation as to their conduct."); *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019), *aff'd*, 831 F. App'x 161 (6th Cir. 2020) ("[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012))).[12]

---

[11] The Court of course is aware that legal entities such as BSRO and BSAM can act only through employees or other agents, but that truism does not affect the nature or applicability of the Court's discussion here.

[12] The closest Defendants get to making this argument is in the Reply, when they write, "Gil cannot admit the two entities are separate and in the same breath, attempt to impute all acts of one onto the other. *See Tenn. Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 497 (6th Cir. 1985) (It is well established that a parent corporation and a subsidiary are in law separate and distinct entities….). The legal reality of these corporate doctrines prohibit Gil from just lumping BSRO and BSAM together as one. One entity has administrative duties, the other is an entity that sells tires and employs workers to do so." (Doc. No. 25 at 5). However, this argument is manifestly different, as it asserts the impropriety (under *"corporate doctrines"*) of imputing alleged acts of one Defendant onto the other and of lumping together two defendants when in fact they are different entities; this is not the same as asserting the impropriety under *the Federal Rules of Civil Procedure* of lumping together both Defendants *without differentiating between who did what*. In any event, the argument is cursory and unsupported, as it cites nothing in the record and cites only a single case, which clearly does not support all of what is  encompassed within the argument

The second potential argument is that if—as Plaintiff (for good reason) alleges—BSAM acted as an ERISA fiduciary, then it is implausible that BSRO would also have done so because (so this argument goes) BSRO would have had no need or reason to veer into BSAM's lane and also act as a fiduciary.

At first glance, Defendants might seem to have made each of these arguments. But on closer look, it is clear that they actually have made neither.

The third potential argument is that to the extent the Complaint does allege that BSRO acted as a fiduciary, those allegations are implausible for some other reason beyond the one just mentioned in connection with the potential second argument. At first glance, Defendants may appear to make this argument where they assert, as noted above, "that Gil has not plausibly pled facts that, if true, would indicate [that BSRO] engaged in any aspect of plan administration as opposed to the entity which, as pled, is the Plan's administrator, much less any administrative acts that were done in a fiduciary capacity." (Doc. No. 12 at 12-13). But Defendants' argument here (which the Court has rejected above) actually is that Plaintiff did *not* plead facts indicating that BSRO (as opposed to BSAM) engaged in some aspect of plan administration—not the argument that if (as the Court has found) the Complaint *did* plead those facts, those facts are not plausible.[13]

_____

Defendant did make. And the Reply was not the proper time to raise for the first time an argument (like both the third potential argument identified by the Court herein and the argument that Defendants actually did make) that, considering all applicable circumstances, should have been raised earlier, in Defendants' Brief. So the Court disregards the argument on that basis alone.

[13] As for Defendants' additional (non-"fundamental") argument encompassed within the quote from Defendants' Brief—that Plaintiff alleged facts indicating only "ministerial" acts, and not acts that were done in a fiduciary capacity—the argument fails due to lack of support. The only purported support for it is a citation to *Walker*, 492 F. App'x at 565. *Walker* does support the proposition that acts that are purely ministerial in nature—which in *Walker* happened to be "mailing conversion notices and collecting biographical information" —do not give rise to fiduciary responsibilities under ERISA. *Id.* But it does not support the proposition that all of the acts alleged in the Complaint in this case were "ministerial" in this case. And beyond citing *Walker*, Defendants do nothing to explain why the Court should treat all of the alleged acts as "ministerial" and accordingly conclude, despite needing to draw all inferences in Plaintiff's favor, that the Complaint alleges alleged no acts that give rise to fiduciary duties. Notably, if it were true

For various reasons, each of these arguments would have had weaknesses had it been made. But the Court need not address them on the merits, because Defendants did not make them.

In summary, it remains to be seen whether BSRO actually undertook acts that made it an ERISA fiduciary and, if so, whether it is liable on the breach-of-fiduciary-duty claim against BSRO on Count II. But for now, the claim survives because Defendants have not met their above-referenced burden (of explanation) in moving to dismiss; the Court cannot conclude that they have shown that Count II fails to state a claim against BSRO.

CONCLUSION

For the reasons set forth above, the Motion (Doc. No. 15) will be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion will be granted with respect to the claim in Count I against BSRO, and otherwise denied, i.e., denied with respect to the claim against BSAM in Count I and the claim against BSRO in Count II.

An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

that the Complaint alleges no such acts, then Count II would be subject to dismissal *with respect to both Defendants*, because (as indicated above) the Complaint does not allege acts undertaken by BSAM that were not taken by BSRO but rather treats all acts as being undertaken by *both* Defendants. So it is perhaps telling (though ultimately of no analytical significance with respect to the claim against BSRO) that Defendants did not assert this argument as to the claim against BSAM. One is tempted to conclude that Defendants realized that, construed in favor of Plaintiff, the Complaint alleges acts that could be treated as fiduciary acts—in which case Defendants' argument here fails with respect to BSRO just as it would have failed with respect to BSAM.