UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID GIL,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGESTONE AMERICAS, INC., and BRIDGESTONE RETAIL OPERATIONS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 3:22-cv-00184<br><br>JUDGE RICHARDSON |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court are two motions for summary judgment. The first was filed by Plaintiff, David Gil (Doc. No. 52, "Gil MSJ"). Supporting the Gil MSJ is a memorandum with various attached exhibits (Doc. Nos. 53, 53-1 through 53-3) and a statement of facts (Doc. No. 54, "Gil SOF"). Defendants filed a response to the Gil MSJ (Doc. No. 61), as well as a response to the Gil SOF (Doc. No. 60). Plaintiff filed a reply in further support of the Gil MSJ. (Doc. No. 62).

The second was filed by Defendants Bridgestone Americas, Inc. ("BSAM") and Bridgestone Retail Operations, LLC ("BSRO") (Doc. No. 55, "Bridgestone MSJ"). Supporting the Bridgestone MSJ are various exhibits (Doc. Nos. 55-1 through 55-6), a memorandum (Doc. No. 56), and a statement of facts (Doc. No. 57, "Bridgestone SOF"). Plaintiff filed a response to the Bridgestone MSJ (Doc. No. 58), as well as a response to the Bridgestone SOF (Doc. No. 59). Defendants filed a reply in further support of the Bridgestone MSJ. (Doc. No. 63).

For the reasons stated herein, the Bridgestone MSJ is **GRANTED**, and, as necessarily follows from the granting of the Bridgestone MSJ, the Gil MSJ is **DENIED**

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56 "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[1] *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the

[1] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009). "[S]ummary judgment in favor of either party is not proper if disputes remain as to material facts . . . . [T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). In addition, "if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 843

(6th Cir. 1997) (citing *Celotex Corp*., 477 U.S. at 322-23); *see also Ely v. Dearborn Heights School Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015) (explaining that if the moving party bears the burden of proof at trial, that party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1992))).

## BACKGROUND

This matter was initiated via Plaintiff's complaint (Doc. No. 1, "Complaint"), to which Defendants filed a motion to dismiss (Doc. No. 15). After this Court's previous Order (Doc. No. 47) granting in part and denying in part Defendants' motion to dismiss, the parties have each moved (as noted above) for summary judgment on the remaining claims of (i) statutory ERISA penalties as to BSAM, and (ii) breach of fiduciary duty as to both BSAM and BSRO. Before reviewing the substance of the Bridgestone MSJ and the Gil MSJ, the Court first will set forth material (or at least relevant)[2] facts as to which there exists no genuine dispute.

## FACTS [3]

BSAM is the parent entity of subsidiary Bridgestone entities, including BSRO. (Doc. No. 59 at ¶ 3). BSAM sponsors and administers certain ERISA-governed benefit plans in which qualifying employees of BSAM and its subsidiaries (such as BSRO) are eligible to participate. (*Id.*

[2] Not all of the facts set forth below are necessarily "material" for purposes of Rule 56, but all of them are at least relevant in the sense of providing helpful context for the facts that are material.

[3] The following facts are taken from Plaintiff's response (Doc. No. 59) to the Bridgestone SOF (Doc. No. 57), Bridgestone's response (Doc. No. 60) to the Gil SOF (Doc. No. 54), and the Complaint (Doc. No. 1). They are construed as undisputed because Plaintiff indicates in his response to the Bridgestone SOF that he does not dispute them and/or affirmatively asserts them himself (in the Complaint and/or the Gil SOF—and, if in the latter, such facts are not disputed by Defendants).

at ¶ 2). One such plan—the plan at issue in this dispute—is the Bridgestone Americas, Inc., Salaried Employees Retirement Plan ("Plan"), a tax-qualified defined-benefit plan. (*Id.* at ¶ 5). Participating employees who accrue enough pension service to vest receive, upon retirement, a pension benefit that is based on a formula factoring in the respective employees' years of pension credit and earnings while employed. (*Id.* at ¶ 6).

BSRO engages in the business of manufacturing tires and the separate business of selling those tires in retail locations. (*Id.* at ¶ 1). Plaintiff began working for BSRO on July 28, 1996, as a salaried manager trainee at a retail tire center. (Doc. No. 60 at ¶ 1). Plaintiff remained a salaried BSRO employee until September 2000, when he left employment with BSRO. (*Id.*). At that time, Plaintiff did not have a vested pension benefit. (Doc. No. 59 at ¶ 11). On January 1, 2006, Plaintiff once again became an employee of BSRO—this time as an hourly employee—via the acquisition of Plaintiff's then-employer, Morgan Tire. (*Id.* at ¶ 14). BSAM "subsequently recognized later service with Bridgestone"[4] for vesting credit for employees, like Plaintiff, who were rehired as part of an acquisition. (*Id.* at ¶ 12).

In October 2016, Plaintiff made an election to take early Social Security retirement benefits ("Early Election") and understood that he had until October 1, 2017 to rescind the Early Election. (Doc. No. 60 at ¶ 6). Effective March 1, 2017, BSAM contracted with Willis Towers Watson ("WTW") to provide pension administration support services via WTW's web-based platform. (Doc. No. 59 at ¶ 19). WTW provided, among other things, an online pension estimator ("Pension

---

[4] The Court is unsure what precisely "later service with Bridgestone" means in the context of this undisputed fact—e.g., "later" than what event or point in time? And to which one(s) of the two Defendants (if either) does "Bridgestone" refer? But from this undisputed fact, the Court infers that this "subsequent recogni[tion]," whatever it denotes, is the reason why Plaintiff received a pension benefit under the Plan, since it appears that previously he did not have a vested pension benefit.

Calculator"). (*Id.* at ¶ 21). After the Pension Calculator became available in March 2017,[5] Plaintiff accessed and utilized it multiple times to generate estimated pension benefits. (Doc. No. 59 at ¶ 29).

Each time that Plaintiff accessed the Pension Calculator, Plaintiff reviewed and acknowledged a disclaimer,[6] and Plaintiff was aware that (as the disclaimer indicated) the Pension Calculator was for informational purposes only and estimations therefrom could contain errors.

---

[5] The Court here notes, but does not treat as undisputed, that Plaintiff pled in his Complaint that "[i]n the summer of ***2016***, [Plaintiff] relied on the [Pension Calculator estimate] to carefully construct a budget . . . [and] in late ***2016***, executing that plan, he elected to take his Social Security retirement benefits four years early." (Doc. No. 1 at ¶ 19, emphasis added). Defendants, in their answer to the Complaint (Doc. No. 17) expressly denied and specifically contested this allegation. (*Id.* at ¶ 19).

Notably, Plaintiff concedes in his response to the Bridgestone SOF that it is undisputed that the only action that he claims to have taken in reliance on the overestimated pension benefit (discussed by the Court shortly hereafter) was *not rescinding* the Early Election by the October 1, 2017, deadline. (Doc. No. 59 at ¶ 37). This concession runs directly counter to the Complaint, wherein (as just noted) the sole actions that Plaintiff claims to have taken in reliance on the Pension Calculator estimate was the "construct[ion] of a budget" and the related *making* of the Early Election. (Doc. No. 1 at 4, ¶¶ 19-20)

[6] The disclaimer states in relevant part as follows:

> Please read the Important Information that follows. You will need to confirm that you have read this notice by clicking the Accept button below before proceeding to the Web site.
>
> These benefit estimates are for informational purposes only and are solely intended to inform you of possible benefits provided through the Plan(s) described. Actual benefits received in the future may vary from these estimates as your age, service, and earnings change and in accordance with Plan provisions then in effect. In all cases, if there is any discrepancy between information made available through this Web site and benefits which may be provided pursuant to the official Plan (the "Plan") provisions, the Plan document will govern.
>
> . . .
>
> **<u>Disclaimer</u>**
>
> . . .
>
> The system is a tool that allows you to review different retirement scenarios to assist you in planning your retirement. It is an estimator only, and the estimates provided are based on your information we have on file, the data you enter and the assumptions that you choose. Those records may contain errors that could affect the calculation of your estimated benefits. Therefore, any of the amounts shown are subject to change. As you approach retirement and are making a decision to retire, you should contact the Company.

(Doc. No. 55-1 at 65).

(Doc. No. 59 at ¶ 28). The Pension Calculator generated incorrect, overestimated[7] benefits for Plaintiff. (*Id.* at ¶ 26, Doc. No. 60 at ¶ 15). On May 10, 2017 and October 4, 2018, Plaintiff called WTW and discussed his Pension Calculator-produced overestimated benefit. (Doc. No. 60 at ¶ 14). On June 3, 2019, Plaintiff initiated his retirement on WTW's online portal. (Doc. No. 59 at ¶ 32). This triggered a pension benefit calculation review, whereby WTW's benefit administration team realized that Plaintiff's actual benefit was less than what the online pension estimator had estimated for him. (*Id.* at ¶ 33). WTW notified Plaintiff of the issue on or around June 5, 2019 and confirmed that Plaintiff's correct pension benefit was the lesser benefit reflected in his June 4, 2019 retirement kit.[8] (*Id.* at ¶ 34, Doc. No. 60 at ¶ 8). Plaintiff appealed WTW's determination, and in an August 30, 2019 final determination ("Final Determination"), the Bridgestone Americas, Inc. Benefits Appeals Board denied his appeal for a greater pension benefit and upheld Plaintiff's lesser pension benefit as correct. (Doc. No. 59 at ¶ 35). Plaintiff received the Final Determination shortly after August 30, 2019. (*Id.* at ¶ 35). Knowing his actual, lesser pension benefit, Plaintiff elected to continue working at BSRO and did not experience any break in employment service. (Doc. No. 59 at ¶ 36).

## ANALYSIS

Turning to the respective substance of the Gil MSJ and the Bridgestone MSJ, each side contends that it is entitled to summary judgment as to both Plaintiff's two claims—the first against BSAM for statutory noncompliance with 29 U.S.C. § 1025 ("Count I"), specifically for failure to

[7] Plaintiff's benefit was overestimated because the Pension Calculator "incorrectly credited [Plaintiff] for service as a *salaried* employee [for years in which] he was in fact an *hourly* employee of Morgan Tire, and then an *hourly* employee of BSRO." (Doc. No. 59 at ¶ 26) (emphasis added).

[8] This "retirement kit," as Defendants call it, appears to be a summary document detailing Plaintiff's "Pension Benefits under the [Plan]." (Doc. No. 55-1 at 107).

provide certain ERISA-mandated pension benefit statements, and the second against both BSRO and BSAM for breach of fiduciary duty ("Count II").

## I. Count I

With respect to Count I, Plaintiff argues that he failed to receive certain disclosures required by "Section 105 of ERISA, [which is codified at] 29 U.S.C. § 1025," particularly the statutorily-defined pension benefit statement required thereunder, and seeks to enforce this statutory right via the private right of action prescribed by 29 U.S.C. § 1132(c). (Doc. No. 53 at 7-8, Doc. No. 1 at 5, ¶¶ 26-30). Defendants[9] argue that Plaintiff's Count I claim is time-barred, as (i) a one-year limitations[10] period, borrowed from Tennessee's most analogous statute of limitations (which provides a one-year limitations period) applies; (ii) Plaintiff received

---

[9] Although Count I was dismissed as to BSRO, leaving BSAM as the only Defendant on Count I, the Court will refer in this section to the arguments being those of "Defendants" (plural), given that the arguments regarding Count I were advanced in Defendants' joint Bridgestone MSJ and joint memorandum in support thereof.

[10] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period.... A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017-19 (1997). When using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the case law and briefing of the parties he quotes may not do so and thus may be less precise or looser in their terminology (something that the undersigned tries to rectify at times herein via bracketed language within quotations herein).

documentation satisfying the statutory definition of a pension benefit statement "around June 4, 2019 and August 30, 2019"; and (iii) Plaintiff's "receipt of that documentation was more than a year before he filed this lawsuit, making his [Count I] claim time barred." (Doc. No. 56 at 23-24).

*a. Legal Standard, Count I*

In the absence of a federally mandated statute of limitations, "courts should borrow the most analogous state statute of limitations." *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 331 (6th Cir. 1985). *See also Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194-5 (6th Cir. 1992). Federal courts analyzing the appropriate state analog look to the law of the forum state—in this case, Tennessee—focusing on "the forum state's statute of limitations applicable to the most 'closely analogous' state substantive claim." *Champion Int'l Corp.*, 779 F.2d at 333. Tenn. Code Ann. § 28-3-104(a)(1)(C) provides that "[a]ctions for statutory penalties" should be commenced "within one [1] year after the cause of action accrued." *Id.* As ERISA § 1132(c) is a statutory penalty, Tenn. Code Ann. § 28-3-104(a)(1)(C) is the most analogous state statute of limitations. *See, e.g., Day v. Southern Elec. Ret. Fund Bd. of Trustees*, 2020 WL 6937455, *3 (E.D. Tenn. Aug. 27, 2020); *Gregory v. Goodman Mfg. Co., L.P.,* 2011 WL 2006343, at *5 (E.D. Tenn. May 2, 2011)*, report and recommendation adopted,* 2011 WL 1988419 (E.D. Tenn. May 23, 2011).

Accordingly, the Court will apply this one-year limitations period[11] to Count I. As to when a cause of action thereunder accrues, "[a]lthough the statute of limitations may be borrowed from state law, it is federal law that determines the date on which a statute of limitation begins to run. *Michigan United Food & Com. Workers Unions & Drug & Mercantile Emps. Joint Health & Welfare Fund v. Muir Co.*, 992 F.2d 594, 598 (6th Cir. 1993). "The . . . limitations period begins

[11] Plaintiff (Doc. No. 53 at 21) and Defendants (Doc. No. 56 at 22) agree that a one-year limitations period applies.

to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004). A plaintiff has "reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citation omitted). "Courts have taken a common-sense approach to this task, inquiring as to what event should have alerted the typical lay person to protect his or her rights. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (citation omitted).

Under ERISA, defined benefit plan administrators must send a "pension benefit statement":

> **(i)** At least once every 3 years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and
> **(ii)** To a participant or beneficiary of the plan upon written request.

29 U.S.C. § 1025(a)(1)(B). Such pension benefit statement:

> **(i)** Shall indicate, on the basis of the latest available information--
> > **(I)** the total benefits accrued, and
> > **(II)** the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable,
>
> **(ii)** Shall include an explanation of any permitted disparity under section 401(l) of Title 26 or any floor-offset arrangement that may be applied in determining any accrued benefits described in clause (i),
> **(iii)** Shall be written in a manner calculated to be understood by the average plan participant, and
> **(iv)** Subject to subparagraph (E), may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participant or beneficiary.

*Id.* at § 1025(a)(2)(A). ERISA allows plan administrators to satisfy the triennial pension benefit statement requirement for a defined benefit plan by providing "[a]lternative notice" as follows:

> . . . [A]t least once each year the administrator provides to the participant notice of the availability of the pension benefit statement and the ways in which the participant may obtain such statement. Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably

accessible to the participant.

*Id.* at (a)(3)(A). Hereafter, the Court will refer to a document satisfying the requirements of § 1025 (a)(2)(A) as a "PBS."[12]

*b. Analysis, Count I*

Defendants contend that that the June 4, 2019 retirement kit ("Retirement Kit") provided to Plaintiff "included the information required for a [PBS]" and that the August 30, 2019 Final Determination confirmed that information. (Doc. No. 56 at 23-24). Plaintiff asserts (albeit in a conclusory manner) that the Final Determination "[did] not meet the statutory definition of a [PBS]" and cites 29 U.S.C. § 1025(a)(2)(A) for the "required contents of a [PBS], such as 'total benefits accrued,' amount of those benefits that are nonforfeitable, etc." (Doc. No. 53 at 22).

Although ERISA does not define the phrase "total benefits accrued," it does define the phrase "accrued benefit." Specifically, it defines that term to mean (as relevant here) "the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). Accordingly, the Court interprets "total benefits accrued" consistent with the ordinary meaning of the word "total," in conjunction with the statutorily defined phrase "accrued benefit." *See BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 237, (2021) ("When called on to interpret a statute, this Court generally seeks to discern and apply the ordinary meaning of its terms at the time of their adoption."). That interpretation leads the Court to conclude that "total benefits accrued" means the entirety of the benefit to which Plaintiff was entitled, at the time of such calculation, under the Plan. And the Retirement Kit conveyed exactly that—setting out a detailed explanation of each

[12] "PBS" obviously is an acronym for "pension benefit statement," but it bears emphasis that herein, "PBS" refers not to just *anything* that might be called a "pension benefit statement" but rather only to a document—a "pension benefit statement"—that satisfies the requirements detailed in § 1025 (a)(2)(A).

component of paying Plaintiff's total accrued benefits under the Plan (Doc. No. 55-1 at 122-23), in addition to the associated dollar amount of each manner (*id.* at 124-25). Further, the Retirement Kit provided the data points specific to Plaintiff (e.g., relevant employment dates, service information, benefits amounts, etc.) by which the various benefit payment amounts were calculated. (*See id.* at 128). Accordingly, the Court finds both that: (i) there is no genuine dispute of material fact as to whether the June 4, 2019 Retirement Kit conveyed Plaintiff's "total benefits accrued;" and (ii) given the applicable material facts, the June 4, 2019 Retirement Kit conveyed Plaintiff's "total benefits accrued" as a matter of law. 29 U.S.C. § 1025(a)(2)(A)(i). It is undisputed that Plaintiff received the figure for the benefit amount reflected in the Retirement Kit, (Doc. No. 59 at ¶¶ 34-36), and it cannot be genuinely disputed that Plaintiff actually grasped and understood what that figure was, given that he appealed the benefit figure in the Retirement Kit (an appeal that ultimately resulted in the Final Determination).[13] Therefore, the Court finds as a matter of law that the Retirement Kit was "written in a manner calculated to be understood by the average plan participant, and . . . delivered in written, electronic, or other appropriate form," as is necessary for a document to constitute a PBS. 29 U.S.C. § 1025(a)(2)(A)(i).

Because the Retirement Kit satisfied the requirements of a PBS and was sent to Plaintiff in June 2019, the requirements of 29 U.S.C. § 1025(a)(2)(A)(i) were satisfied as to Plaintiff from June 2019 through June 2022.[14] Plaintiff filed this lawsuit in March 2022. (*See* Doc. No. 1).

---

[13] That is to say, Plaintiff must have understood this; after all, Plaintiff appealed the benefit amount from the Retirement Kit shortly thereafter, and it is inexorably inferable that the appeal was prompted by Plaintiff's full understanding (and disapproval) of that benefit amount.

[14] As to the period preceding Plaintiff's June 2019 receipt of the Retirement Kit (i.e, as to any noncompliance by Defendants with 29 U.S.C. § 1025 in that period), the Court finds as a matter of law that Plaintiff's claims (if any) are time-barred under the one-year limitations period borrowed (for the reasons discussed above) from Tenn. Code Ann. § 28-3-104(a)(1)(C).

Drawing all reasonable inferences in favor of Plaintiff, the Court finds as a matter of law that any such claims accrued at the latest at the time of Plaintiff's review of the Final Determination, as that document

Therefore, any noncompliance subsequent to March 15, 2022 could not possibly have supported a claim at the time of filing of the Complaint. Accordingly, Defendants (and in particular, the remaining Defendant on Count I, BSAM) are entitled to summary judgment on Count I.

## II. Count II

The elements of breach of fiduciary duty are "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these [challenged representations] constituted material misrepresentations; and (3) that [the plaintiff] relied on those misrepresentations to [his] detriment." *Van Loo v. Cajun Operating Co.*, 703 Fed. Appx. 388, 394 (6th Cir. 2017) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).

Plaintiff asserts that Defendants breached their fiduciary duty by "fail[ing] to provide him with periodic benefit statements or any other calculation of his pension benefit." (Doc. No. 58 at 17). But Plaintiff does not offer any briefing or legal authority to support the notion that this failure can independently support a claim of breach of fiduciary duty for Count II, and is not limited to supporting a claim of the kind Plaintiff makes in Count I (i.e., a claim based on a violation of

---

definitively confirmed the information in the Retirement Kit (which set out the information necessary for the Retirement Kit to constitute a PBS). Why that time? Because this was the point at which Plaintiff—having reviewed a document satisfying the requirements of 29 U.S.C. § 1025(a)(2)(A)(i)—"kn[ew] or ha[d] reason to know that the act providing the basis of his . . . injury ha[d] occurred." *Howard*, 111 F. App'x at 421.

At that time, Plaintiff, in "the exercise of reasonable diligence," would have reviewed the historic pension documents that he previously had received and compared them with the Retirement Kit to realize any discrepancies between the information contained in such historic pension documents and the Retirement Kit. *Friedman*, 929 F.2d at 1159 (6th Cir. 1991) (citation omitted). Alternatively, if Plaintiff had *never* received historic pension documents, he would have recognized such non-receipt in "the exercise of reasonable diligence"—i.e., in seeking to assess whether the figure in the Retirement Kit was appropriate.

ERISA Section 105).[15] Plaintiff failed to address[16] how these purported failures support Count II,[17] despite the fact that Defendants, in their memorandum in support of the Bridgestone MSJ, attacked the idea that functions of the kind that Defendants allegedly failed to perform here—which involve communicating with employees and calculating benefits—implicate fiduciary duties so as to support a claim for breach of fiduciary duty. (Doc. No. 58 at 13). Therefore, the Court declines to consider them in its analysis of Count II.

Plaintiff also asserts that Defendants breached their fiduciary duty by "fail[ing] to provide him with additional information about his pension as per his request," citing unspecified inquiries to "a number of his local, BSRO managers and human relations representatives," and a specific "June 10, 2015 [set of] pension questions, submitted through the myHR portal" (Doc. No. 58 at 9,

---

[15] Indeed, in the memorandum supporting the Gil MSJ, Plaintiff acknowledges that Defendants' purported "[ERISA] Section 105 disclosure violations *do not necessarily* constitute separate fiduciary breaches." (Doc. No. 53 at 20 (emphasis added)).

[16] It is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No. 07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009)). *Accord Emerson v. Norvartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs, hunting for truffles" that might be buried in the record). The Court is not under any obligation to develop, flesh out, or formulate arguments on Plaintiffs' behalf. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [appellant's] behalf"). Arguments which are perfunctory, conclusory, undeveloped, or devoid of legal authority can even be deemed waived. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *United States v. Sandridge,* 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted).

[17] Plaintiff's failure is also problematic given the apparent incoherence of grounding Plaintiff's Count II claim in Defendants' *failure* to provide these "periodic benefit statements or any other calculation of [Plaintiff's] pension benefit." (Doc. No. 58 at 17). The detriment Plaintiff alleges is a reduced Social Security benefit arising from the Early Election. But if Plaintiff did not know what his pension benefit would be (due to the purported failure of Defendants to provide pension benefit documents), then Plaintiff could not have relied on an (unknown) pension benefit amount when making the decision to make the Early Election. This is problematic, given that detrimental reliance is the third element of Plaintiff's Count II claim. *Van Loo,* 703 Fed. Appx. at 394.

n.6, Doc. No. 60 at ¶ 5). But Defendants have demonstrated (*see* Doc. No. 60 at ¶ 5) that there is no genuine dispute that Plaintiff's 2015 documented inquiry was definitively answered and confirmed that, at that time, Plaintiff did not have a pension benefit.[18]

Plaintiff also asserts that Defendants breached their fiduciary duty by "repeatedly misrepresenting . . . the amount of [Plaintiff's] pension." (Doc. No. 58 at 1). Specifically, Plaintiff cites the overestimate generated by the Pension Calculator and discussed with WTW representatives on May 10, 2017, and on October 4, 2018. (*Id.* at 7-8). Finally, Plaintiff asserts that Defendants breached their fiduciary duty by failing to inform Plaintiff of the incorrect benefit figures given to him via the Pension Calculator after "learn[ing] in July 2017 that the [Pension Calculator] produced an erroneous pension estimate for employees who had intervening service with Morgan Tire." (*Id.* at 10).

Defendants contend that (i) BSRO neither is a Plan fiduciary nor took fiduciary actions with respect to Plaintiff and therefore is entitled to summary judgment as to Count II, (ii) none of the challenged representations were made by an ERISA fiduciary acting in its fiduciary capacity, and (iii) the challenged representations were neither material nor reasonably relied upon. (Doc. No. 56 at 12-20). The Court need not analyze the majority of the parties' arguments, as Defendants have shown that there is no genuine dispute that Plaintiff cannot establish detrimental reliance, i.e., a link between any of the alleged wrongful acts or omissions by Defendants and Plaintiff suffering the (sole) resulting detriment he alleged in his Complaint—i.e., the Early Election. (*See* Doc. No. 1 at ¶ ¶ 17-20). Plaintiff made the Early Election in September 2016. (Doc. No. 59 at ¶ 16). As noted above, the challenged representations took place in 2017 and 2018. (*See* Doc. No. 59 at ¶ 29). Accordingly, Defendants have shifted the burden to Plaintiff to show that he relied upon the

---

[18] [Plaintiff] "As I understand it, I have no pension available" . . . [Bridgestone "askhr" Agent] "[Y]ou are not eligible for a pension . . ." (Doc. No. 55-1 at 28).

challenged representations in making the Early Election.

Plaintiff claimed for the first time in the memorandum supporting the Gil MSJ (Doc. No. 53 at 5) and then in his response to the Bridgestone MSJ (Doc. No. 58 at 11-12, n.7)[19] that, in reliance on the overestimated pension benefit figure, he forwent rescinding the Early Election by the October 1, 2017, deadline.[20] That is to say, via his memorandum supporting the Gil MSJ (Doc. No. 53 at 5), Plaintiff for the first time alleged a resulting detriment beyond the sole resulting detriment alleged in his Complaint—namely, the non-revocation of the Early Election. Plaintiff may not, at this stage, advance a different theory of reliance to support the Gil MSJ (or to resist the Bridgestone MSJ) as to Count II. *See Neumann v. Plastipak Packaging, Inc.*, 2011 WL 5360705, *11 (N.D. Ohio Oct. 31, 2011) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (citation omitted); *see also Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 511-12 (6th Cir. 2025) ("A plaintiff may not shift its theory of liability at the summary judgment stage in a way that materially alters the pleaded factual basis of its claim and prejudices the opposing party"); *Vaughn v. City of Lebanon,* 18 Fed. Appx. 252, 272 (6th Cir. 2001) ("Plaintiff cannot change its theory of the case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment.") (citation omitted).

---

[19] As noted in a footnote above, Plaintiff later acknowledged, in his response to the Bridgestone SOF, that *this* is what he is claiming, and that he is *not* claiming to have taken any other action "based on the [Pension Calculator] estimate." (Doc. No. 59 at ¶ 37). This, despite the fact that (as also noted in the footnote above) the Complaint does not make this claim and instead claims only that the Early Election was taken in reliance on the Pension Calculator estimate.

[20] The Court notes that even in the memorandum supporting the Gil MSJ, Plaintiff continued to assert that he "relied reasonably on Defendants' misrepresentations to his detriment in *deciding to take* an early Social Security benefit at a reduced monthly rate." (Doc. No. 53 at 16, emphasis added). But, as noted above, Plaintiff backed off this assertion via his response to the fact numbered "37" of the Bridgestone SOF. (*See* Doc. No. 59 at ¶ 37).

Accordingly, the Court finds both that there is no genuine dispute of material fact that Plaintiff did not rely on the challenged representations in making the Early Election and, given this undisputed material fact, that as a matter of law Plaintiff cannot establish the third element—detrimental reliance—of his claim for breach of fiduciary duty. *See Van Loo*, 703 Fed. Appx. at 394 (citation omitted). Defendants are entitled to summary judgment as to Count II.

## CONCLUSION

With respect to both Counts of the Complaint, for the reasons stated herein, Defendants have demonstrated the absence of a genuine issue of material fact and that the applicable Defendant(s) is (are) entitled to judgment as a matter of law. Accordingly, summary judgment is warranted as to both Counts of the Complaint. Thus, the Gil MSJ (Doc. No. 52) is **DENIED**, and the Bridgestone MSJ (Doc. No. 55) is **GRANTED**.

The Clerk is directed to enter judgment under Federal Rule of Civil Procedure 58 and close the file.

IT IS SO ORDERED.

Eli Richardson

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE